STATE OF CONNECTICUT *v.* EARL W. SKINNER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 15—decided June 1, 1945.

*Thomas J. Birmingham,* with whom, on the brief, was *James F. Kennedy,* for the appellant (defendant).

*John P. Hodgson,* assistant state's attorney, with whom, on the brief, were *Hugh M. Alcorn, Jr.,* state's attorney, and *Charles S. House,* assistant state's attorney, for the appellee (state).

Ells, J.   The defendant, Earl Skinner, and his half sister Mildred were tried and convicted upon an information charging them with incest, in violation of General Statutes, § 6229.   Earl Skinner has appealed.

The statute provides as follows: "Every man and woman who shall marry or carnally know each other,

being within any of the degrees of kindred specified in § 5148, shall be imprisoned. . . ." Among the degrees of kindred specified in the latter section is that of brother and sister. The defendant claims that the relationship of half sister does not come within the prohibition. It is admitted in his brief that all the cases which the defendant's counsel have found are to the contrary, and that public policy would indicate that relationship of the half blood should be included in the prohibition of the incest statute. Among the cases which directly hold that, as used in statutes punishing incest, the word "brother" includes a brother of the half blood, and the word "sister" includes a sister of the half blood, are the following: *State* v. *Wyman,* 59 Vt. 527, 8 Atl. 900; *Shelly* v. *State,* 95 Tenn. 152, 31 S. W. 492; *Burdue* v. *Commonwealth,* 144 Ky. 428, 432, 138 S. W. 296. See also 5 Words & Phrases (Perm. Ed.) p. 845; 31 C. J. 377; 27 Am. Jur. 289. In the leading case of *State* v. *Wyman,* supra, 529, decided in 1887, the court said: ". . . the generally understood significance of the word 'brother,' as used in the common affairs of life, and as defined by the lexicographers of recognized authority, should be adopted in the construction of the statute." Cases decided subsequent to this decision have, so far as we have been able to ascertain, reached a like result. In view of the purpose of the statute now under consideration, its language, and the soundness of the decisions we have cited, we hold that the word sister, as used in the statute, applies to and includes a half sister.

The defendant claims that the trial court erred in finding upon all the evidence that he was guilty of the crime charged beyond a reasonable doubt. The state was required to prove both the fact that the crime had been committed and the defendant's agency therein. It offered evidence from which the court found that

the defendant, after his arrest, voluntarily confessed to a police officer that he had had sexual intercourse with his sister upon three occasions. In his testimony at the trial, however, the defendant denied that he had had relations with her. The utility of such an extrajudicial confession is fully discussed in *State* v. *La-Louche,* 116 Conn. 691, 166 Atl. 252, where we said (p. 693) that the corpus delicti—the fact that the specific crime charged has been committed by someone—cannot be established by the extrajudicial confession of the defendant unsupported by corroborative evidence; that, although the confession is evidence tending to prove both the fact that the crime was committed and the defendant's agency therein, it is not sufficient of itself to prove the former, and, without evidence aliunde of facts also tending to prove the corpus delicti, it is not enough to warrant a conviction; and that there must be such extrinsic corroborative evidence as will, when taken in connection with the confession, establish the corpus delicti in the mind of the trier beyond a reasonable doubt. We went on to say (p. 695): "The independent evidence must tend to establish that the crime charged has been committed and must be material and substantial, but need not be such as would establish the corpus delicti beyond a reasonable doubt apart from the confession." The defendant's claim is that the state did not produce "material and substantial" evidence that the crime of incest had been committed.

The finding serves the purpose of showing the conclusions reached by the trial court upon conflicting testimony which, if reasonably reached, must be accepted. *State* v. *Simborski,* 120 Conn. 624, 626, 182 Atl. 221. The court found, and upon the evidence reasonably could have found, the following facts applicable to the corpus delicti: The defendant and his half

sister Mildred lived with their mother, part of the time in a house in Manchester and part of the time in New York City; on many occasions the defendant was with his sister when other persons were not present; the defendant was thirty-eight and Mildred seventeen years of age; she was a mentally undeveloped child; a medical examination made subsequent to her arrest revealed that her hymen had been ruptured. The court further found that perforation or puncture of the hymen is a necessary result of sexual relations. The only medical evidence on this point was that of a doctor who testified that a ruptured hymen is the most frequent condition to occur from such relations, that it was not possible to tell how long a time before he examined the girl the rupture had occurred, and that there were several ways in which the hymen might be ruptured otherwise than by sexual intercourse. The trial court could hardly in reason accept his testimony as to the rupture and refuse to believe the other testimony he gave. This is especially true in view of the fact that a second doctor produced by the state and two produced by the defendant testified that the girl did not have a ruptured hymen.

The state's reliance is upon opportunities for intercourse and the ruptured hymen. "Opportunity" is no more than one circumstance which, coupled with others, might be sufficient, but standing alone proves nothing; 1 Wharton, Criminal Evidence (11th Ed.), § 356; see also 1 id., § 236; 2 id., p. 1270; and that must be particularly true of a brother and sister alone in their own home. The finding of a ruptured hymen, concerning which there was no evidence as to how long it had existed, and in regard to which the only testimony was that there were several ways in which it might have been caused, does not furnish any reasonable support for a finding of the corpus delicti. In

*State* v. *LaLouche,* supra, we supported such a finding, but the evidence was very much more substantial than in the present case. There was testimony by a woman who occupied an adjoining cottage that on several occasions she saw the girl enter the defendant's house dressed in her bathing suit and heard the accused accompany her to a second-floor bedroom; that on two successive days she heard the girl utter exclamations, which she quoted and which aroused suspicion that the girl was being made the victim of indecent assaults; and that she reported the circumstances to the police. After the arrest, the girl was examined by two physicians, who testified that she had a healed laceration of the hymen and that in their opinion the laceration had occurred ten days to two weeks prior to the examination. The laceration of the hymen was thus connected up with the incidents previously testified to.

We are constrained to hold that there is error on the ground assigned. It is more important to preserve the requirements of proof of the corpus delicti than to hold this particular defendant guilty upon the evidence presented in this record.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion MALTBIE, C. J., and DICKENSON, J., concurred.

BROWN, J. (dissenting). Judge Jennings and I agree with the law of the majority opinion but feel that the evidence justified the trial court in finding the corpus delicti proven under the principles there set forth.