STATE OF CONNECTICUT *v.* HOWARD R. DOUCETTE

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued November 5—decided December 30, 1959

*Benedict M. Holden, Jr.,* special public defender, for the appellant (defendant).

*John D. LaBelle,* state's attorney, for the appellee (state).

KING, J. Howard R. Doucette, who is the defendant, and Edward J. Rogers were indicted for the murder of Howard Doucette, Jr., and were tried together by three judges under the provisions of what is now § 54-82 of the General Statutes. Rogers was acquitted. Doucette was convicted of murder in the first degree, and from that judgment this appeal was taken. The state claimed that on September 24, 1955, Doucette murdered the decedent, a male child about two months old, by holding his head up to an unlighted gas oven, after the gas had been turned on, thereby causing death by asphyxiation. For some eight months before the child was born, Doucette and the decedent's mother, Mrs. Reina Hunt Lee, a married woman, had been living together as Mr. and Mrs. Doucette in a basement apartment consisting of one room and a private bath. Not until about two years after the child's death was a homicide suspected, and the state's case largely consisted of two confessions by Doucette and evidence concerning a re-enactment by him of the homicide.

The first claim of the defendant is that there was insufficient extrinsic evidence of the corpus delicti to warrant the court's admission of his confessions of July 24 and July 26, 1957, and the evidence of his re-enactment of the homicide before the police on July 24, 1957. Each of the two confessions, as well as the evidence as to the re-enactment, amounted to a full confession of guilt of the crime charged, although all were repudiated by the defendant when he took the stand. At the time when the evidence in question was admitted, it could not be known whether the defendant would choose to take the stand. But for the admission of it in the state's case in chief, the defendant might have elected not to take the stand and to rely on a claim

that the state had failed to make out a prima facie case of guilt. *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193, and cases cited.

The defendant's re-enactment took place before the police in the basement apartment which the defendant and Mrs. Lee were occupying at the time of the baby's death. In the course of the re-enactment, the defendant demonstrated how he had held the baby's head up to the unlighted gas oven. This re-enactment covered all of the essential elements of the crime charged. See *State* v. *Willis,* 71 Conn. 293, 314, 41 A. 820. It pointed out nothing, however, except an ordinary gas stove such as might be found in almost any similar apartment. Without extrinsic evidence that death was caused by asphyxiation, the gas stove was without significance as a lethal weapon or instrumentality. See *State* v. *Litman,* 106 Conn. 345, 352, 138 A. 132. The re-enactment was a confession, although not in writing, and nothing more. It was a confession by demonstration. *State* v. *Castelli,* 92 Conn. 58, 67, 101 A. 476; *Cashman* v. *Terminal Taxi Co.,* 131 Conn. 31, 33, 37 A.2d 613. Had the defendant been deaf and dumb and unable to write, for instance, the only method available for direct communication to the police might have been re-enactment. The same requirement of extrinsic evidence of the corpus delicti should apply as though the re-enactment had been an ordinary written confession. A full re-enactment was treated as a confession in *State* v. *Castelli,* supra, and the admissibility of proof of the re-enactment held subject to the customary preliminary question as to its voluntary character. The finding in the present case makes clear that the court correctly treated the re-enactment as in effect a confession.

"[T]he *corpus delicti* [that is, that the crime

charged has been committed by someone] cannot be established by the extra-judicial confession of the defendant unsupported by corroborative evidence." *State* v. *LaLouche,* 116 Conn. 691, 693, 166 A. 252; *State* v. *Skinner,* 132 Conn. 163, 166, 43 A.2d 76; *State* v. *Guastamachio,* 137 Conn. 179, 182, 75 A.2d 429. This is the almost universal rule. Notes, 127 A.L.R. 1130, 1131, 45 A.L.R.2d 1316, 1320; 7 Wigmore, Evidence (3d Ed.) § 2071. As to the extent of the corroborative proof of the corpus delicti which is required before a confession can be admitted in evidence, there is less unanimity of opinion. Differences may in part be accounted for by the almost infinite variety of factual situations in which the question has arisen. The federal cases are collected in an annotation in 99 L. Ed. 110. Leading decisions in the state and federal courts may be found in 127 A.L.R. at 1133-1141 and 45 A.L.R.2d at 1325-1338.

The Connecticut rule, which we reaffirm, is "that, although the confession is evidence tending to prove both the fact that the crime [charged] was committed [by someone, that is, the corpus delicti] and the defendant's agency therein, it is not sufficient of itself to prove the former, and, without evidence aliunde of facts also tending to prove the corpus delicti, it is not enough to warrant a conviction; and that there must be such extrinsic corroborative evidence as will, when taken in connection with the confession, establish the corpus delicti in the mind of the trier beyond a reasonable doubt." *State* v. *Skinner,* supra. This appears to be the general rule. 7 Wigmore, op. cit., p. 397. "The independent evidence must tend to establish that the crime charged has been committed and must be material and substantial, but need not be such as would establish the

*corpus delicti* beyond a reasonable doubt apart from the confession. . . . Properly this [extrinsic] evidence should be introduced and the court satisfied of its substantial character and sufficiency to render the confession admissible, before the latter is allowed in evidence." *State* v. *LaLouche,* supra, 695. This is in accord with *Opper* v. *United States,* 348 U.S. 84, 93, 75 S. Ct. 158, 99 L. Ed. 101. Neither of the confessions, nor the evidence as to the re-enactment, in effect constituting a third confession, can be treated as extrinsic corroborative evidence of the corpus delicti. "[E]ven two positive confessions of guilt, without independent proof of the corpus delicti, would not be sufficient to authorize a conviction." *Bines* v. *State,* 118 Ga. 320, 327, 45 S.E. 376. It remains to consider the evidence of the corpus delicti presented by the state apart from the confessions and the evidence as to the re-enactment and, in the application of our rule, to determine whether such evidence of the corpus delicti was sufficient to authorize the admission of the two confessions and the evidence of the re-enactment. For convenience, these three items of evidence will hereinafter be referred to as confessions.

Evidence extrinsic to the confessions and relied upon by the state tended to prove that after the baby had died the police were called instead of a doctor, that when the police arrived the baby was fully dressed and had on a bonnet, and that Rogers, who had stayed at the apartment the night of the death, had left before the police arrived. Of course, there was abundant extrinsic evidence that the child had died, and of opportunity on the part of the defendant to murder him. Opportunity, however, is but one circumstance and, standing alone, proves nothing. *State* v. *Skinner,* supra, 167. The mere

fact of the child's death, while essential to a conviction, cannot be considered as material or substantial evidence that he was murdered. See *State* v. *Washelesky*, 81 Conn. 22, 30, 70 A. 62. Calling the police was not indicative of guilt. The failure to call a doctor instead of the police was unusual, perhaps, but was certainly not substantial or material evidence of the corpus delicti. The dressing of the body, even if the baby was undressed when he died, is of little, if any, evidential force, because the police and the medical examiner had full opportunity to, and did, examine the body. Certainly the defendant would have no ground to believe that they would be likely to curtail an investigation because of the slight extra labor involved in undressing the body. The medical examiner found what he diagnosed as a diaper rash on the body; he did not think that an autopsy was called for, nor was there evidence that the rash was an indication of, or was caused by, asphyxiation. The decedent was not Rogers' child, and the fact that Rogers left before the arrival of the police was of no material significance. We fail to see how any or all of this could be considered as material or substantial evidence of the child's murder.

Two other items of extrinsic evidence are relied upon by the state. Each was admitted over the objection of the defendant. After the death of the baby, the defendant and Mrs. Lee continued, as before, to live together. On July 20, 1957, nearly two years later, a detective and a policewoman, in the course of an investigation of a matter wholly unrelated to any homicide, interviewed the defendant and Mrs. Lee. As a result, the defendant, on July 22, 1957, was presented in the Hartford Police Court on a charge of fornication. The case was continued.

On further investigation that day, the officers found that the defendant and Mrs. Lee were the parents of the baby who had died on September 24, 1955. After further questioning, the defendant, on July 23, 1957, made a statement which was reduced to writing and signed by him. This statement in effect said that the defendant and Mrs. Lee had been living together for some time prior to the birth of the decedent on July 27, 1955, that subsequently Mrs. Lee had had two miscarriages, and that she had given birth to a child only six weeks before the defendant's arrest. The statement went on to say that the defendant had had doubts as to the paternity of the decedent because Mrs. Lee might have been pregnant before they started living together and the baby did not look like him. From time to time, the statement continued, he had argued with Mrs. Lee about the baby's paternity, but she had always maintained that he was the father.

The statement was offered by the state as an admission by the defendant that he had thought that he was not the father of the child and therefore as indicating a reason for his disliking the child and a motive for his doing away with him. So far as it tended to prove motive, the statement was to some extent inconsistent with the defendant's claim of innocence on the trial. The fact that the statement tended to prove that the defendant had committed the crime of fornication, if not of adultery, did not make it inadmissible. *State* v. *Palko,* 122 Conn. 529, 536, 191 A. 320; *Guarnaccia* v. *Wiecenski,* 130 Conn. 20, 25, 31 A.2d 464. But, in the view which we take of the case, we are not really concerned with the admissibility of the statement as an admission. See *Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 209, 140 A.2d 708, and cases cited. Nor are we

concerned with its admissibility in rebuttal as an inconsistent statement to affect the credibility of the defendant after he had taken the stand and testified that he had loved the decedent and that after the child's birth he had never questioned that he was the father. See *State* v. *Walters,* 145 Conn. 60, 67, 138 A.2d 786, and cases cited. This is because the precise question before us is whether, if we assume the admissibility of the statement as an admission, it was material or substantial extrinsic evidence of the corpus delicti.

The most that could be claimed for the statement was that it was some evidence of motive. But while evidence of motive is desirable and important, a motive is not ordinarily an element of a crime and was not an element of the crime charged here. *State* v. *Journey,* 115 Conn. 344, 350, 161 A. 515. Evidence of motive, alone, certainly would not constitute the necessary "material and substantial" evidence tending to establish the corpus delicti. *State* v. *LaLouche,* 116 Conn. 691, 695, 166 A. 252; *State* v. *Journey,* supra. In so far as it had any probative force, the statement tended to prove the defendant's agency in committing the murder if a murder had been committed, rather than the corpus delicti, that is, that a murder had been committed. Thus this admission was not sufficient, alone, to permit the introduction of the confessions.

The final item of extrinsic evidence relied upon by the state also involves a ruling on evidence. First, another ruling admitting in evidence the death certificate issued by the medical examiner in 1955 must be explained. The defendant had informed Mrs. Lee that the baby was dead and had asked her to summon the police. He followed Mrs. Lee to the apartment of the landlady, who telephoned the police.

They arrived about 10:30 in the morning and found the baby dead, but fully clothed. They were joined by the medical examiner and an undertaker's assistant. The police and the medical examiner inspected the body, and the medical examiner reexamined it later in the day at the funeral home. There was some mottling of the skin, a sign of death. There was the rash on the middle portion of the body and upper parts of the legs, and the medical examiner diagnosed it as a diaper rash. He then made out a death certificate, stating, as the cause of death, "Overwhelming infection suspected." The certificate was duly filed in the office of the registrar of vital statistics in Hartford. Under the heading of "Antecedent Causes" of death, the certificate stated "Abrasions of the buttocks and legs due to wet diapers." This death certificate was the result of the examination of the baby by the medical examiner and the information given him by the defendant and Mrs. Lee at their apartment. The state claimed that the certificate, although in part based on hearsay, and itself hearsay, was admissible for what it was worth as evidence of the cause of death, under the rule of *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 486, 129 A. 379, and under what is now General Statutes §§ 6-56 and 7-62. Of course, the defendant has no cause to complain of the admission in evidence of this death certificate, since it in no way suggested homicide. At the time the certificate was issued, the medical examiner had no reasonable ground for believing, and did not believe, that an autopsy should be ordered under the provisions of what is now § 6-59. Without an autopsy or blood examination, the medical examiner could not, from examination, determine that the child had died from asphyxiation.

After the defendant had confessed the killing and Mrs. Lee had made a statement, the police officers informed the medical examiner of what they had ascertained. He thereupon wrote a letter to the registrar of vital statistics asking him to change the death certificate so as to substitute as the cause of death "Asphyxiation from gas fumes" and to specify that the death was a homicide. The registrar physically attached this letter to the original death certificate as on file and made the requested changes, noting on the face of the certificate that they were made at the request of the medical examiner. Over objection of the defendant, the letter and the amended death certificate were admitted in evidence. The medical examiner testified that the cause of death he gave in the amended death certificate was based on information he had received from the police, although his physical examination of the decedent in 1955 had revealed nothing inconsistent with asphyxiation as a cause of death. The precise question before us is whether the amended death certificate could be considered as evidence of the corpus delicti, extrinsic to the confessions. In so far as there was a change in the original death certificate, that change resulted from information given by the police which in turn was derived from the confessions and was apparently corroborated to some extent by a statement of Mrs. Lee and perhaps by a statement of Rogers. The altered death certificate cannot, under the facts here, be counted as evidence of the corpus delicti extrinsic to the confessions, on which, alone, the certificate appears to have been largely, if not entirely, based. So to treat the certificate would subvert our corroboration rule. This is as far as we are required to go, and is quite apart from any question of the admissibility of the

amended certificate as tending to prove the cause of death for any purpose other than as evidence of the corpus delicti extrinsic to the confessions.

No individual item, nor the sum total of all the items, of the extrinsic evidence of the corpus delicti presented in chief and relied upon by the state was adequate to constitute "material and substantial" evidence of the corpus delicti under our rule. We are therefore constrained to find error in the admission of each of the confessions as well as in the admission of the evidence of the re-enactment. There can be no question that these errors were material and require a reversal of the judgment of guilty.

We briefly discuss the claim of the defendant that he was denied his constitutional right to a speedy trial. The circumstances of the case were unusual in several respects. When the defendant was arrested on July 20, 1957, it was on a charge of fornication. There was then no thought in anyone's mind, even the defendant's, of a charge of homicide. Apparently he was told of a statement or confession given by Mrs. Lee, and he was thereafter confronted by her. He then confessed to the homicide. The charge of murder is not lightly to be made against anyone, and further investigation by the medical examiner and the coroner was in order. See General Statutes §§ 6-56, 6-57, 6-59—6-64. There was also the problem of providing proper counsel for the three involved, Rogers, Mrs. Lee and the defendant. At the coroner's hearing on September 16, 1957, the public defender was present on behalf of the defendant, as permitted by § 6-62. The question of representation by counsel was heard in open court on December 17, and it was then believed that the public defender could represent both Rogers and the

defendant, at least when they were put to plea. On January 22, it was ascertained that Mrs. Lee had not, contrary to what had been thought, obtained counsel, and the court directed the public defender to talk to the three accused to determine whether their interests conflicted so that he should not represent all three. The next day, the public defender reported that he felt that a fair trial required that each accused have a separate attorney. Thereupon, the public defender was assigned to represent Mrs. Lee and steps were taken to employ two additional attorneys as special public defenders, one to represent Rogers and the other the defendant.

The final appointment of counsel for the defendant was made on February 11, 1958. Thereafter, a grand jury was summoned, a true bill was returned on February 25, and the defendant was put to plea on the same day. At the request of counsel for the defendant, two continuances were granted to permit adequate preparation of the defense. Under the circumstances, there was no unreasonable delay, even during the fall of 1957. Note, 57 A.L.R.2d 302. Moreover, the defendant made no request for a trial and no objection to any of the delays, either at the hearings in court or elsewhere. Id., 310, 326; 14 Am. Jur. 863, § 138; *State* v. *Holloway,* 147 Conn. 22, 25, 156 A.2d 466. From December 17, 1957, on, there were only such delays as were reasonably necessary to give the defendant the protection which this state has required for every accused, especially where he is being supplied with counsel by the state. See *State* v. *Reid,* 146 Conn. 227, 234, 149 A.2d 698. This very case is a demonstration of the effectiveness of Connecticut's system of safeguarding the rights, however technical, of indigent accused, and of the quality of counsel sup-

plied them. The system far transcends any requirement of the federal constitution. Notes, 93 L. Ed. 137, 148; 94 L. Ed. 1193; 96 L. Ed. 161; 2 L. Ed. 2d 1644.

Since a new trial is required, the claim of the defendant that there was insufficient evidence to warrant a conviction of murder in the first degree within the requirements of our so-called two-witness statute, § 54-83, need not be discussed. The further claim of the defendant that his constitutional rights were violated by the sentence of life imprisonment rather than of death is too obviously lacking in merit to warrant discussion. *State* v. *Walters,* 145 Conn. 60, 70, 138 A.2d 786.

In the trial of a person charged with the commission of a crime, it is more important to enforce the time-tested safeguards which the law has erected for the protection of the innocent than to distort and subvert them in order to block the escape from punishment of even an apparently guilty person. Such has ever been the policy of this state. See *State* v. *Skinner,* 132 Conn. 163, 168, 43 A.2d 76; *State* v. *Perelli,* 128 Conn. 172, 181, 21 A.2d 389; *State* v. *Ferrone,* 97 Conn. 258, 270, 116 A. 336.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.