STATE OF CONNECTICUT *v.* THOMAS F. SPEZIALE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 14-479

Argued June 9—decided August 7, 1961

*Peter J. Zaccagnino, Jr.,* of Hartford, for the appellant (defendant).

*Sebastian J. Russo,* assistant prosecuting attorney, for the appellee (state).

CICALA, J. The information charged the defendant with pool selling, in two counts, in violation of § 53-295 of the General Statutes. The defendant was found guilty on the first count and not guilty on the second count. He brings this appeal on the

first count and sets forth eight assignments of error. Subsequently, he filed a ninth assignment of error.

As concerns the ninth assignment of error, the rules of this court make no provision for filing additional or supplemental assignments of error; and, while this practice is allowed in appeals to the Supreme Court of Errors by § 438 of the Practice Book, this section is not among those enumerated in Circuit Court Rule 7.51.1. Therefore, the supplemental assignment of error was improper and we cannot consider it.

The defendant did not pursue in his brief or oral argument his sixth and seventh assignments of error and, consequently, we assume them to have been abandoned. See Practice Book § 455.

In his first assignment of error, the defendant claims that he was required to plead to a defective information. The defendant was charged with pool selling in two counts. Both counts referred to the same date, the same location and, in fact, the same chain of events. In the first count, he was charged with being "concerned with buying or selling pools" upon the results of horse races, and in the second count, he was charged with "possessing or occupying an enclosure, as principal, servant or agent for the purpose of making, recording or registering bets." The defendant concedes that it is a matter of discretion whether both counts should have been merged into one; he concedes further that the fact that an information contains duplicity does not provide a sound basis for appeal. However, he does claim that, inasmuch as the question of duplicity was raised before the trial and no corrective action was taken, he was unduly prejudiced. There is nothing in the record which affirmatively shows that the defendant was in fact prejudiced or that sub-

stantial injustice has been done to him. See Practice Book § 353 (d).

The second assignment of error alleges that the trial court erred in failing to require the correction of the defective information, and the defendant refers to his exhibit A, which is the stenographic transcription of the arguments of counsel which were referred to by the defendant in connection with the first assignment of error. This would normally lead to the conclusion that the defendant claimed error because the trial court did not require the merger of the first and second counts of the information. However, when one reads the defendant's brief it appears that he is now complaining only about the language used in the first count of the information. The first count charged the defendant with being concerned in "buying or selling pools." Although it is not clearly stated, we assume that the defendant's complaint is that he should have been charged with being "concerned in buying pools" or "concerned in selling pools." The first count of the information very clearly identifies the crime with which the defendant was charged as "pool selling" and cites the section of the statute in question. If this were all that were stated, it would be valid and sufficient. Practice Book § 344 (a). If there was any question in the mind of the defendant as to what offense he was being called upon to defend against, he could have filed a motion for a bill of particulars. *State* v. *Davis,* 141 Conn. 319, 321. This he did not do. In fact, this question was not raised before, during or at the conclusion of the trial. The defendant's second assignment of error has no merit.

The third error assigned by the defendant attacks the admission into evidence of a conversation between the defendant and an unknown person, overheard by the police officer who was testifying as a

witness, on the ground that it was hearsay. The term "hearsay" signifies all evidence which is not founded upon the personal knowledge of the witness from whom it is elicited and which, consequently, does not depend wholly for its credibility and weight upon the confidence which the jury may have in him. The principal objections to hearsay evidence are that it is not given under oath and that such person is not subject to cross-examination. *Shea* v. *Hyde,* 107 Conn. 287. The evidence in question here concerned a conversation between the accused and another person which was overheard by the witness. The witness testified that he overheard the conversation; therefore, he was testifying from his personal knowledge. He was under oath and, as a witness, was subject to cross-examination. The witness testified as to what he heard and not as to what someone who was not a party to or witness in the proceedings had told him. The conversation was not offered to prove the truth of the matter asserted. See *State* v. *Tolisano,* 136 Conn. 210, 214. The trial court did not err in admitting this evidence.

The defendant claims error, in his fourth assignment, in the admission of statements made by him, when no corpus delicti had been proven as yet. The cases cited by the defendant refer to the admissibility of confessions. Every statement of an accused is not necessarily a confession. A confession is a written or oral indication by the defendant of his guilt. It is evidence tending to prove both the fact that the crime charged was committed and the defendant's agency therein. *State* v. *Reynolds,* 101 Conn. 224, 232, 233; *State* v. *Skinner,* 132 Conn. 163, 166; *State* v. *Doucette,* 147 Conn. 95. There appears to be a popular misconception that any statement uttered by an accused person is inadmissible in evidence until the corpus delicti has been estab-

lished. Such is not the case at all. Until a statement, or an act, or a writing is determined to come within the definition of a "confession," as the word is used in this state, the condition precedent that the corpus delicti must be established in advance of the admission of the evidence in question does not apply. Upon an inspection of the transcript of the evidence in this case, it is obvious that the words uttered by this defendant cannot be construed as a confession of his guilt. The objection was properly overruled. *State* v. *Reynolds,* supra.

In his fifth assignment of error the defendant states: "In concluding that a corpus delicti had been shown as to the accused Thomas F. Speziale and not against the accused Babella, and allowing statements to be admitted as appears in Exhibit D, attached hereto." He does not include in his exhibit D the statement which he claims was erroneously admitted. After searching the record, we find that the statement in question is as follows: "Sam Leon and War Eagle." Once again, these words can in no way be interpreted to be an admission by the defendant. These words, together with whatever other evidence there may be against the defendant, may have an incriminating effect, but that does not make them inadmissible. Therefore, we have no need to consider whether the trial court was warranted in its conclusion that a corpus delicti existed at this point. The defendant's claim that it was error for the court to conclude that a corpus delicti existed as against the defendant and not Babella is without merit.

That the court erred in refusing to set aside the verdict when the evidence was not sufficient to prove guilt beyond a reasonable doubt is the defendant's eighth assignment of error. After a careful examination of all the evidence as reflected in the record, the jury could reasonably have found the following

facts: At approximately 1:25 p.m. on January 14, 1961, the defendant was observed in a telephone booth at the southwest corner of Francis Avenue and Park Street in Hartford. The door of the telephone booth was closed, the defendant had the telephone receiver to his ear and his finger was pointed to a copy of the "Daily Armstrong" which he had opened on the shelf of the telephone booth in front of him. The Daily Armstrong is a periodical which is closely allied with horse racing. Another man was then standing outside the telephone booth, right next to it. The defendant left the telephone booth and, together with the other man, started to walk west on Park Street. When they were about twenty-five feet away from the telephone booth, the other man gave the defendant a bill of currency. The two parted, and the defendant said: "I'll be back there at 2:30." At 2:30 p.m. of the same day, the defendant was observed in the same telephone booth and one Babella was standing outside of the telephone booth next to it. On this occasion, the defendant had a Daily Armstrong opened on the shelf in the telephone booth. The defendant opened the door to the telephone booth and asked Babella, "What do you want now?" After receiving a reply from Babella, the defendant spoke into the telephone the words "Sam Leon and War Eagle." Sam Leon and War Eagle were race horses and at least one of them was running in a race that day. The defendant left the telephone booth and, together with Babella, started to leave hurriedly. When accosted at the scene by the police officer who was observing him, the defendant was very nervous and called the police officer by a name which was that of a member of the vice squad of the state police. He urged the officer to let Babella go because "he doesn't know anything about horses; he never bet on horses." At the time of his arrest, the defendant had in his possession two Daily Armstrongs and an

eyebrow pencil. From the facts recited above, together with the expert opinions given by the police officers concerning the procedures and practices used by those engaged in pool selling on horse races and the adverse inference which could be drawn from the failure of the defendant to testify in explanation, the jury could reasonably have concluded that the defendant was concerned with pool selling on horse races. *State* v. *Tucker,* 146 Conn. 410.

There is no error.

In this opinion CASALE and HOLDEN, Js., concurred.