STATE OF CONNECTICUT *v.* IRVING M. BERKOWITZ

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 10-3071

Argued August 17—decided October 11, 1962

*Abram A. Washton,* with whom, on the brief, was *Arno R. Vogt,* both of New London, for the appellant (defendant).

*Hyman Wilensky,* prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant was convicted in a trial to the jury on a charge of negligent homicide. General Statutes § 14-218. He was charged with having caused the death of Lucille M. Jarvela in an automobile accident on July 29, 1961, in the town of Groton, Connecticut.

Epitomizing the pertinent facts, we find in the record evidence that at about 4:15 p.m., on July 29, 1961, Judy M. Jarvela was operating a 1959 Volkswagen station wagon, bearing Wisconsin registration L-24575, in a westerly direction on route 95 in the town of Groton in the vicinity of King's Highway. Route 95, which runs in an easterly and westerly direction, is a divided highway consisting of one lane eleven feet in width, with a twelve-foot blacktop shoulder, designed for the flow of eastbound traffic, and two lanes, aggregating twenty-four feet in width, with a ten-foot blacktop shoulder, laid out for westbound traffic. The lanes are separated by a grass strip measuring about eight and one-half feet in width and fortified with cement curbing, commonly called the median divider or esplanade. There is a break in the median divider which permits cars to enter King's Highway, both to the right and to the left of route 95. In the Volkswagen, in addition to Judy, the operator, there were six passengers, of whom five were children and the

sixth, Lucille M. Jarvela, age sixty years, Judy's mother-in-law, the decedent. As the Volkswagen proceeded along its westward course on this wet, overcast Saturday afternoon, Judy indicated by the mechanical signaling device on her car that she intended to make a left-hand turn into King's Highway. She gradually moved into her left lane and came to a stop in the turning lane between the median dividers to allow eastbound traffic on route 95 to pass, and, while her car was stopped in the island between the dividers, it was struck from behind by a black 1960 Oldsmobile station wagon, bearing New York registration BX-9599, belonging to the defendant. There was but one person in his car. The impact caused the Volkswagen to mount the curb of the esplanade and roll over into the eastbound lane, where it overturned and was there struck by a 1959 Ford which bore New York registration 7MD-515 and was owned and operated by Dr. John F. D'Errico. Lucille, who had been seated in the front seat of the Volkswagen with one of the children across her lap, was found lying in the roadway with her feet in the window of the car. She suffered severe internal injuries which resulted in her death at 5:55 p.m. of the same day.

John H. Garity, a state trooper assigned to routine patrol duty in the general locale, was at the scene of the accident within a matter of thirty seconds. He went to the aid of the injured woman, who was still conscious. The defendant, upon his own initiative, came up to the police officer and asked: "Is this woman going to die?" The officer replied: "I don't know." The defendant continued: "Please, I have to know because I was driving the car that hit this car in the rear end." Later in the afternoon, at about 5:30 p.m., at the state police barracks, the defendant gave the officer a written statement amplifying his original oral statement.

All three cars were damaged: the Volkswagen was heavily damaged from the top, the front and the rear; the damage to the Ford was approximately in the middle of the left side; the Oldsmobile station wagon had damage to its right front fender, headlight and front bumper. There were tire marks which ran from a point near the median divider to the Oldsmobile. No other cars were at the scene when the police officer arrived.

At the close of the state's case in chief, the defendant moved to dismiss on the ground that the state had failed to make out a prima facie case. The trial court denied the motion. The defendant chose to take the stand and offered testimony in his own behalf. The jury returned a verdict of guilty.

The initial claim of error of the defendant is the denial of his motion to dismiss. "The denial of a motion to dismiss a criminal information has been repeatedly held to be not assignable as error." Maltbie, Conn. App. Proc. § 212, and cases there cited. Moreover where, as here, the defendant elected to take the stand and testify, a review of this assignment would at best amount to an academic determination of his rights. An appeal on this ground under these circumstances is generally denied because of a policy against consumption of judicial time with causes in which a decision would work no practical advantage to the defendant. Efficient judicial administration prohibits academic determinations. The error, if any at all, was cured by the defendant's own testimony. *United States* v. *Gruber,* 123 F.2d 307, 310; *Motes* v. *United States,* 178 U.S. 458, 475; *United States* v. *Domres,* 142 F.2d 477, 479; *Simmons* v. *United States,* 300 F. 321, 322. "Law suits are not determined by a consideration of philosophy in the abstract, but by the application of legal principles to the facts of a particular case." *Lomas & Nettleton Co.* v. *Waterbury,*

122 Conn. 228, 234; see Maltbie, Conn. App. Proc. § 339.

The insistence is made in the next assignment of error that there was insufficient extrinsic evidence of the corpus delicti to warrant the court's admission into evidence of the defendant's oral and written statements. The crime of negligent homicide (§ 14-218) consists of three component elements: (1) the death of a human being (2) by the instrumentality of a motor vehicle (3) operated by one in a negligent manner. See *State* v. *Campbell*, 82 Conn. 671, 677; *State* v. *Goetz*, 83 Conn. 437, 441. It is true, of course, that the corpus delicti, that is, that the crime charged has been committed by someone, cannot be established by the extrajudicial confession of the defendant unsupported by corroborative evidence. *State* v. *Doucette*, 147 Conn. 95, 98, and cases there cited; note, 34 Conn. B.J. 177.

A preliminary problem presented is whether the statements here involved must be corroborated. Although they show at least one element of the offense, still it is clear that they do not amount to a confession admitting all the elements of the offense. For example, there is nothing in the statements admitting the third element of the crime. The question posed here, therefore, is whether the corroboration requirement applies to these admissions. Some courts require independent proof of the corpus delicti only when the defendant's statements amount to a confession. *People* v. *Manske*, 399 Ill. 176 (conviction of manslaughter affirmed; defendant made statement that he had hit deceased twice, knocking her down); *People* v. *Creeden*, 281 N.Y. 413 (conviction for driving truck for longer period than permitted by statute affirmed; defendant had kept record of trip); cf. *Commonwealth* v. *Price*, 67 York Leg. Rec. 21, 22 (Pa.) (conviction of drunken driving affirmed; defendant admitted that the car

involved in the accident was his, from which fact it was concluded that he had been driving); see *Reid* v. *State*, 168 Ala. 118, 122; *State* v. *Weston*, 102 Ore. 102, 115. Other courts apply the rule to confessions and admissions. *Opper* v. *United States*, 211 F.2d 719, 722 (6th Cir.), aff'd, 348 U.S. 84; *Ercoli* v. *United States*, 131 F.2d 354 (D.C. Cir.); see *Braxton* v. *State*, 17 Ala. App. 167, 169. Wigmore favors this view. 3 Wigmore, Evidence (3d Ed.) § 821. The United States Supreme Court, in *Smith* v. *United States*, 348 U.S. 147, in holding the rule of corroboration applicable to at least certain admissions, said (p. 155): "We hold the rule applicable to such statements, at least where, as in this case, the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the [state's] case. . . . An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal 'elements' of the crime or of a fact subsidiary to the proof of these 'elements.' It is the practical relation of the statement to the [state's] case which is crucial, not its theoretical relation to the definition of the offense." See note, 45 A.L.R.2d 1316, 1323. "The need for corroboration extends beyond complete and conscious admission of guilt—a strict confession. [See *State* v. *Willis*, 71 Conn. 293, 314.] Facts admitted that are immaterial as to guilt or innocence need no discussion. But statements of the accused out of court that show essential elements of the crime, here . . . [operation], necessary to supplement an otherwise inadequate basis for a verdict of conviction, stand differently. Such admissions have the same possibilities for error as confessions. They, too, must be corroborated." *Opper* v. *United States*, 348 U.S. 84, 91. We hold

that the defendant's extrajudicial statements in this case require corroboration.

The defendant argues that the statements were used to prove the corpus delicti because without them there would be no showing that an automobile was negligently operated at the time of the smash-up. We think the state presented material and substantial evidence on this point independently of the statements. The pertinent facts have already been related in some detail. To assist the court below in answering vital questions, it had before it many exhibits, in the form of photographs which were taken by the police, graphically depicting the details of the situation. The court also had the benefit of careful explanations of and demonstrations from these exhibits by the witnesses. It was also given measurements revealing the distances between the decisive points involved, especially with relation to the position of the vehicles after the crash. It would do violence to reason and challenge one's credulity in the face of all these facts to hold other than that the corpus delicti was established by the Connecticut rule so recently affirmed in *State* v. *Doucette,* supra, 99.

But, says the defendant, there was no evidence apart from his admissions that he, Berkowitz, was the operator of the Oldsmobile car at the time of the fatality; that is to say, there was no other evidence of the identification of the defendant as the perpetrator of the crime. The corpus delicti does not properly include the agency of the defendant as the criminal; otherwise, this would make the term synonymous with the whole of the charge. Indeed, such a definition has been repudiated. *Forte* v. *United States,* 94 F.2d 236, 244 (D.C. Cir.). Identity of the actor is not a necessary part of the corpus delicti. *Ridgell* v. *United States,* 54 A.2d 679, 682 (Mun. Ct. App. D.C.); *Layfield* v. *State,*

27 Ala. App. 437, 438; 7 Wigmore, Evidence (3d Ed.) § 2072; McCormick, Evidence, p. 230; note, 45 A.L.R.2d 1316, 1336. "By the great weight of authority, the criminal agency of the accused, or, as sometimes stated, the identity of the perpetrator of the homicide, is not an element of the corpus delicti . . . ." *State* v. *Fouquette,* 67 Nev. 505, 531, and cases there cited. The authorities make it quite clear that the state was not required to establish the identity of the operator by any evidence apart from his admissions.

It becomes unnecessary, in the view which we have taken of this case, to consider the assignment of error relating to the denial of the motion to set aside the verdict upon the alleged ground that the state "had failed to establish a prima facie case of negligence and a prima facie case of operation on the part of the defendant."

There is no error.

In this opinion Kosicki and George, Js., concurred.