STATE OF CONNECTICUT *v.* JOSEPH TILLMAN

KING, C. J., MURPHY, ALCORN, COMLEY and HOUSE, Js.

Argued May 5—decided July 7, 1964

*Emanuel Margolis* and *Saul Kwartin,* special public defenders, for the appellant (defendant).

*Otto J. Saur,* state's attorney, with whom, on the brief, were *John F. McGowan* and *Joseph T. Gormley, Jr.,* assistant state's attorneys, for the appellee (state).

KING, C. J. The defendant was convicted, after a trial to the jury, of the crime of manslaughter in causing the death of his wife, Christine. It was the claim of the state that her death, which occurred between 9 and 9:30 o'clock in the evening of July 21, 1962, was caused by a fall to the ground from the rear porch of the third-floor tenement in which she and the defendant lived, and that the fall was the result of her having been thrown, pushed, or otherwise caused to fall, by the criminal act of the defendant.

A principal ground of the defendant's appeal involves claimed errors in the admission in evidence of certain statements made by the defendant in the nature of informal oral confessions.[1] Some were

[1] For the purposes of this opinion we are assuming, without deciding, that the statements amounted to, and should be treated as, confessions, since they covered most of the really controverted elements of the crime charged. Cf. *State* v. *Coffee,* 56 Conn. 399, 413, 16 A. 151; *State* v. *Wakefield,* 88 Conn. 164, 168, 90 A. 230. "[A]n accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and . . . corroboration should be required." *Opper* v. *United*

made, apparently within a few moments after the fall, to friends who were at the home at the time of the occurrence. Others were apparently made later to police officers. Error is also assigned in the admission of a written statement which was made to Dennis J. O'Connor, a detective in the Stamford police department.

Some of the confessions amounted to statements by the defendant that he had thrown his wife over the porch railing to the ground below; others, to statements that she had fallen in the course of a struggle with him on the porch.

The defendant objected to the admission into evidence of each of these confessions on the ground that the state had failed to offer sufficient preliminary proof of the corpus delicti to render any of the confessions admissible under the proper practice as outlined in cases such as *State* v. *Doucette,* 147 Conn. 95, 100, 157 A.2d 487, and in 7 Wigmore, Evidence (3d Ed.) § 2073, p. 404. See also *State* v. *Washelesky,* 81 Conn. 22, 30, 70 A. 62; notes, 127 A.L.R. 1130, 1141; 45 A.L.R.2d 1316, 1339.

We have carefully considered these evidential claims and the further claim that the totality of the evidence of the corpus delicti, independent of, and extrinsic to, the confessions, was insufficient to warrant the use of the confessions by the jury in reaching a verdict of guilty, under the rule laid down

*States,* 348 U.S. 84, 90, 75 S. Ct. 158, 99 L. Ed. 101. Whether a given statement of an accused is an admission or a confession and, if an admission, whether it is of a type which must be corroborated, are questions often not easy of solution. See *Smith* v. *United States,* 348 U.S. 147, 154, 75 S. Ct. 194, 99 L. Ed. 192; note, 99 L. Ed. 110, 113, n.7; 3 Wigmore, Evidence (3d Ed.) § 821; note, 45 A.L.R.2d 1316, 1323 § 5. Complications and difficulties may arise in the trial of cases where the proper procedure to be followed depends on the correct solution of such questions.

in cases such as *State* v. *LaLouche,* 116 Conn. 691, 693, 166 A. 252; *State* v. *Skinner,* 132 Conn. 163, 166, 43 A.2d 76; *State* v. *Guastamachio,* 137 Conn. 179, 182, 75 A.2d 429; and *State* v. *Doucette,* supra, 99; and in 7 Wigmore, op. cit. § 2073, p. 405.

This consideration in turn has led us to a reexamination of our particular corroboration rule. The rule in some form obtains in almost every state. Perkins, "The Corpus Delicti of Murder," 48 Va. L. Rev. 173, 178; 7 Wigmore, op. cit. § 2071. Probably most states define the term corpus delicti, as we have defined it in our cases such as *State* v. *Doucette,* supra, as meaning that the crime charged was committed by someone. 7 Wigmore, op. cit. § 2072, p. 402. This definition has led to complications and difficulties in the application of the corroboration rule and, in Wigmore's words, "makes the rule . . . difficult for the jury to apply amid a complex mass of evidence, and tends to reduce the [corroboration] rule to a juggling-formula". Ibid.; see also § 2073, p. 405. These complications and difficulties are reflected in a lack of harmony in the decisions as to the extent and nature of the corroborative or extrinsic evidence required, both as a prerequisite to the admission of a confession into evidence and as a prerequisite to a conviction where confessions have been introduced. See the collection of cases in 127 A.L.R. 1130 and 45 A.L.R.2d 1316, 1325-1330; 7 Wigmore, op. cit. § 2071; see also note, "Proof of the Corpus Delicti Aliunde the Defendant's Confession," 103 U. Pa. L. Rev. 638, 656, 659; "The Corpus Delicti—Confession Problem," 43 J. Crim. L., C. and P.S., p. 214. For example, the cases dealing with murder seem to apply a definition of corpus delicti at odds with the one stated above. Although the crime charged is not manslaughter but murder

in some given degree, extrinsic evidence tending to prove an unlawful homicide is generally considered adequate under the corroboration rule. Perkins, op. cit., 191, 195. The lack of harmony is also illustrated by the fact that, while in many jurisdictions the evidence corroborative of a confession must relate to, touch upon and tend to establish the corpus delicti, in other jurisdictions it need merely tend to produce a confidence in the trustworthiness of the confession. 7 Wigmore, op. cit. § 2071, pp. 396, 397; note, 45 A.L.R.2d 1316, 1327 § 7. These complications and difficulties have also contributed to some extent in causing differences of opinion as to the respective functions of court and jury in passing upon the sufficiency of the corroborative evidence. 7 Wigmore, op. cit. § 2072 p. 402, § 2073 p. 405; note, 103 U. Pa. L. Rev. 638, 664; note, 45 A.L.R.2d 1316, 1335, 1338. The complications and difficulties in the application of the corroboration rule arising from distinctions between confessions and admissions have already been mentioned in footnote one.

Some of the uncertainties in the application of the corroboration rule in the federal courts were recently resolved by the Supreme Court of the United States in *Opper* v. *United States,* 348 U.S. 84, 93, 75 S. Ct. 158, 99 L. Ed. 101, and *Smith* v. *United States,* 348 U.S. 147, 156, 75 S. Ct. 194, 99 L. Ed. 192. See also *Wong Sun* v. *United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441; *Scarbeck* v. *United States,* 317 F.2d 546, 566 (D.C. Cir.), cert. denied, 374 U.S. 856, 83 S. Ct. 1897, 10 L. Ed. 2d 1077; note, 99 L. Ed. 110. Somewhat similar to the federal rule is the holding of a recent New Jersey case. *State* v. *Lucas,* 30 N.J. 37, 56, 152 A.2d 50.

We are convinced that the application of our

definition of corpus delicti creates complications and difficulties in the trial of cases involving our corroboration rule. Complications and difficulties themselves tend to produce unjust results because of the greater hazard that mistakes will be made by the court or jury. 7 Wigmore, op. cit. § 2070 p. 395, § 2072 p. 402. After careful consideration, we have come to the conclusion that these complications and difficulties in the application of our corroboration rule largely stem from our present definition of corpus delicti and dictate its abandonment.

Under the Wigmore definition, the corpus delicti consists of the occurrence of the specific kind of loss or injury embraced in the crime charged. We adopt this definition.[2] Under it, in a homicide case, the corpus delicti is the fact of the death, whether or not feloniously caused, of the person whom the accused is charged with having killed or murdered. 7 Wigmore, op. cit. § 2072, pp. 401, 403. This change in definition requires us to overrule our cases of *State v. LaLouche,* supra; *State v. Skinner,* supra; *State v. Guastamachio,* supra; and *State v. Doucette,* supra, to the extent that they define the term corpus delicti as meaning the fact that the crime charged was committed by someone. Incidentally, we also point out that while the requisite corroborative evidence must be material and substantial, it may be circumstantial in nature. Note, 45 A.L.R.2d 1316, 1333.

Of course, it must not be overlooked that there can be no conviction in any criminal case unless there has been proof beyond a reasonable doubt of each essential element of the crime charged and also

[2] Actually, there is much to be said for the Massachusetts rule, which dispenses with any arbitrary quantitative corroboration test. *Commonwealth v. Kimball,* 321 Mass. 290, 293, 73 N.E.2d 468.

of the accused's agency in its commission. Furthermore, General Statutes § 54-83 precludes the conviction of a person for any capital crime without the testimony of two witnesses, or that which is equivalent thereto; see *State* v. *Malm,* 142 Conn. 113, 118, 111 A.2d 685; and § 53-9 (amended by No. 322 of the 1963 Public Acts) precludes a plea of guilty of murder in the first degree from alone being effective to establish "the degree of the crime". Both these statutes remain unaffected by our adoption of the Wigmore definition of corpus delicti.

Under this definition, there was no error in the admission or use of the confessions. Indeed, the fact of death was abundantly proved by extrinsic evidence and was not open to question. Actually, there was a considerable amount of corroboration indicating the trustworthiness of the confessions.

We are hampered in the consideration of certain other claims of error by the irregularity and inadequacy of the appeal record. Two evidential rulings, however, are sufficiently presented by the finding to enable us to consider them.

There was no error in the court's exclusion of a question asked of a policeman as to the purpose of an extra iron railing above the thirty-two inch railing on the rear porch of the next-door apartment. The relevant issue was the height of the railing on the Tillman porch, from which the state claimed the deceased fell, as that height, when compared with her own height of about sixty-one inches, might bear on the possibility that she lost her balance and accidently fell over the railing to the ground. The court wisely exercised its discretion in excluding the question as to the height of an extra railing on a different porch as introducing a collateral issue of little, if any, relevance to the issues of the case. Further-

more, as far as appears, the jury were as well able to determine the question as was the policeman. See *Eamiello* v. *Piscitelli*, 133 Conn. 360, 368, 51 A.2d 912.

A hospital record covering the deceased's admission to the Stamford Hospital in October, 1961, because of a suicide attempt, was offered for its bearing on her then depressed mental condition, which was claimed to be indicative of a predisposition toward suicide, so as to make suicide a possible explanation of the fatal fall. In this particular case, evidence indicating accident or suicide as a possible cause of the fall was important as tending to raise a reasonable doubt as to the state's case. The evidence excluded should have been admitted as tending to prove suicide as a cause of the fall. The previous suicide attempt had occurred only about nine months before and had resulted in hospitalization for four or five days. In view of the importance of the evidence under the peculiar circumstances, we are constrained to hold that its exclusion was reversible error. Of course, the admission of the exhibit in its entirety might be subject to qualifications under the rules laid down in cases such as *Maggi* v. *Mendillo*, 147 Conn. 663, 667, 165 A.2d 603, and *Sheary* v. *Hallock's of Middletown, Inc.*, 149 Conn. 188, 195, 177 A.2d 680.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.