******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROGEAU
R. COLLINS
(AC 35401)

DiPentima, C. J., and Sheldon and Foti, Js.

*Argued October 16, 2013—officially released January 21, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Espinosa, J. [motion to preclude]; O'Keefe,
J. [judgment].)

*Daniel J. Foster*, assigned counsel, for the appel-
lant (defendant).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *Thomas R. Garcia*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Rogeau R. Collins, appeals from the judgment of conviction, rendered following a jury trial, of felony murder in violation of General Statutes § 53a-54c and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). On appeal, the defendant claims that the trial court improperly: (1) excluded a statement made by another suspect in the crimes of which the defendant was convicted, (2) excluded testimony regarding the defendant's statements to police, and (3) excluded evidence of items seized from the residence of another suspect. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. In March, 2009, Robert Dixon, the victim, resided in Hartford with his girlfriend. Dixon always carried two cell phones. He used one cell phone to sell drugs and the other for personal matters. In addition, he always wore an expensive pair of Cartier glasses. He did not store the drugs he sold at his home, but kept them at a remote location secured in a safe. The key to the safe was on the same key ring as Dixon's car keys.

On March 9, 2009, Dixon exchanged several phone calls with an individual named Adrian Dean, a friend of the defendant. At approximately 9:25 p.m. that night, Dixon left his residence in his vehicle carrying both of his cell phones and wearing his Cartier glasses. Sometime thereafter, Dean joined Dixon in the vehicle. Dean then contacted the defendant, who was driving around the Hartford area in his girlfriend's vehicle. Dean arranged to meet the defendant at a location in Bloomfield and gave the defendant directions to that location. The defendant followed Dean's directions and arrived at the location at approximately the same time as Dean and Dixon. Dixon and the defendant then drove their vehicles toward a cul-de-sac at the end of the road. Dixon turned his vehicle in the cul-de-sac and came to a stop. The defendant pulled up and stopped his vehicle to the left of Dixon's vehicle. The defendant then exited his vehicle. Both the defendant and Dean, who had exited Dixon's vehicle, approached the driver's side door of Dixon's vehicle. Dixon was still sitting in the driver's seat of his vehicle. Dean, with a firearm in one of his hands, opened the driver's side door of Dixon's vehicle and shot Dixon in the head. Dean then asked the defendant to search Dixon's pockets. The defendant began patting Dixon's pockets when Dixon flinched and attempted to escape the vehicle through the passenger side door. Dixon was shot seven times as he attempted to escape and died as a result of the multiple gunshot wounds. The defendant and Dean then left the scene in the defendant's vehicle. The following morning, on March 10, 2009, Dixon was found dead by two fishermen. Dixon's two cell phones, Cartier glasses, and keys were not found at the scene. The defendant was

arrested on March 24, 2009.

The state, in a long form information filed on January 11, 2011, charged the defendant with murder in violation of General Statutes § 53a-54a (a), felony murder in violation of § 53a-54c, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), robbery in the first degree in violation of § 53a-134 (a) (2), and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (2). The jury found the defendant guilty of felony murder and robbery in the first degree, but not guilty on each of the remaining charges. The court sentenced the defendant to a total effective term of forty-five years of imprisonment.[1] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court improperly excluded testimony of an alleged statement made by Dean to Carlton Martin, Dean's former cellmate in prison, as inadmissible hearsay. Specifically, the defendant contends that Martin's testimony as to Dean's alleged statement was admissible as a statement against penal interest pursuant to § 8-6 (4) of the Connecticut Code of Evidence. We disagree.

The following additional facts and procedural history are necessary to resolve this claim. During trial, defense counsel notified the court that he intended to call Martin to testify about a statement made by Dean while the two shared a prison cell. The prosecutor objected to Martin's proffered testimony as inadmissible hearsay. Defense counsel, however, argued that Martin's testimony was admissible as a statement against Dean's penal interest. As part of defense counsel's offer of proof, Martin testified outside the presence of the jury. Martin's testimony revealed that he was serving a ninety-six year term of imprisonment and had shared a prison cell with Dean between May and December, 2010. During this period, Dean and Martin watched an episode of the television show "Cold Case," which involved betrayal between two codefendants to a crime. The show prompted a discussion about codefendants between Dean and Martin. During their discussion, Dean mentioned that he still had a codefendant on trial. He explained that he originally intended to take his case to trial, but decided to take a twenty-five year sentence plea deal after learning that the defendant had implicated him in the shooting. Dean was apparently upset, according to Martin, that the defendant gave a statement to the police: "[E]specially when [the defendant] didn't know nothing about it . . . he didn't even have to go that route, all he had to do was just shut up and go all the way." The court excluded Martin's testimony of Dean's statement on the basis that it did not constitute a statement against penal interest and, therefore, was inadmissible hearsay.

We begin by setting forth our standard of review. It is well established that "[w]e review a trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 10–11, 1 A.3d 76 (2010). "[A]fter a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, [it is] vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Internal quotation marks omitted.) *State* v. *Smith*, 289 Conn. 598, 617–18, 960 A.2d 993 (2008). Accordingly, "[w]e will make every reasonable presumption in favor of upholding the trial's court ruling and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Snelgrove*, 288 Conn. 742, 758, 954 A.2d 165 (2008). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 11.

In the present case, the trial court excluded testimony with respect to Dean's statement because it determined that it did not fall within the statement against penal interest exception to the hearsay rule. It is hornbook law that "hearsay statements may not be admitted into evidence unless they fall within a recognized exception to the hearsay rule." *State* v. *Smith*, supra, 289 Conn. 618; see Conn. Code Evid. § 8-2. Section 8-6 (4) of the Connecticut Code of Evidence embodies an exception to the hearsay rule for statements against penal interest. Section 8-6 (4) applies where a hearsay statement made by an unavailable declarant was "trustworthy . . . [and] at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." Conn. Code Evid. § 8-6 (4). In short, the admissibility of Dean's statement to Martin is subject to a binary inquiry: (1) whether Dean's statement to Martin was against Dean's penal interest and, if so, (2) whether the statement was sufficiently trustworthy.[2] See *State* v. *Pierre*, 277 Conn. 42, 67, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

"As to what is against penal interest, quite obviously the essential characteristic is the exposure to risk of punishment for a crime . . . . Moreover, it is not the fact that the declaration is against interest but the awareness of that fact by the declarant which gives the statement significance." (Citations omitted; internal quotation marks omitted.) *State* v. *Bryant*, 202 Conn. 676, 695–96, 523 A.2d 451 (1987). Our review of the evidence before the court reveals that Dean's statement

was not against his penal interest because it did not subject him to criminal punishment. Prior to making the alleged statement to Martin, Dean already had pleaded guilty to conspiracy to commit robbery in the first degree, robbery in the first degree, and felony murder on February 3, 2010.[3] During the plea canvass, Dean admitted that both he and the defendant had shot and robbed Dixon. Dean was subsequently sentenced to twenty-five years of imprisonment. Dean already was incarcerated when he made the alleged statement as a result of pleading guilty to the crimes that were the subject of his alleged statement. Because Dean could not have been subject to additional punishment as a result his statement to Martin, it cannot function as one against Dean's penal interest.[4] See *State* v. *Thomas*, 296 Conn. 375, 384–85, 995 A.2d 65 (2010) (where case disposed of on guilty plea, jeopardy attaches at least by time of sentencing); see also *State* v. *Smith*, supra, 289 Conn. 632 ("the admission of a crime supports an inference of reliability because people do not tend to subject themselves to criminal prosecution lightly"). On the basis of the foregoing, we conclude that Dean's alleged statement to Martin was not against his penal interest.[5] Therefore, the court did not abuse its discretion by excluding Martin's testimony as inadmissible hearsay.

## II

The defendant next claims that the court improperly precluded evidence of the circumstances in which he made certain statements to the police and, in doing so, deprived him of his right to a present a complete defense as required by the fourteenth amendment to the federal constitution. See U.S. Const., amend. XIV, § 1. We disagree.

The following additional facts and procedural history are necessary to resolve this claim. Prior to trial, the defendant filed a motion to suppress written statements he made in the presence of Bloomfield police Sergeant Shawn Bolden. Following a hearing, the court denied the defendant's motion to suppress.[6] During trial, the state called Bolden as part of its case-in-chief. On direct examination, Bolden testified about his interview with the defendant on March 19, 2009. He specifically testified that, at the beginning of the interview, he informed the defendant that "he wasn't under arrest . . . he was free to leave and . . . he didn't have to submit to an interview." Bolden also testified that the defendant did not seem to have any trouble understanding him and did not appear to be under the influence of drugs or alcohol. Thereafter, the state introduced the defendant's written statements through Bolden.

On cross-examination, defense counsel probed the circumstances surrounding the defendant's questioning. Through the cross-examination of Bolden, defense counsel established that (1) the defendant was

at all times escorted by a police officer while at the police station for questioning, (2) the questioning lasted approximately nine hours, (3) the police utilized certain questioning techniques, (4) Bolden and the other officer present during questioning were physically large in comparison to the defendant's stature, (5) the conversation was not recorded, and (6) the defendant was born in Jamaica and came to the United States as a young boy.

Defense counsel then inquired about the defendant's waiver of his *Miranda* rights.[7] Bolden testified that he had the defendant fill out a *Miranda* waiver form. Defense counsel asked Bolden, with respect to the *Miranda* waiver, "you put on there that [the defendant] understood English to a limited degree, could write to a limited degree, correct?" Bolden answered in the affirmative, prompting defense counsel to inquire: "Were you able to test . . . to what dimension that was, how limited he was in his understanding?" The prosecutor objected on relevance grounds and requested to be heard outside the presence of the jury.

After the jury left the courtroom, the prosecutor argued that "[defense counsel] is getting into the custody and voluntariness of the waiver . . . [t]here's already been a prior ruling on this issue . . . ." The court sustained the objection and informed defense counsel: "[*Y*]*ou can ask whatever you want* [*if*] *you're trying to show coercion or that it's a false statement or inaccurate*. . . . But when [your questions] mix in legal issues like the question of voluntariness and custody . . . [you're arguing] legal conclusions that have already been visited and ruled on . . . . [Y]ou're just trying to circumvent the ruling of the court . . . . [*Y*]*ou can ask as many questions as you want about the circumstances of the encounter*." (Emphasis added.) The defendant's claim of error is limited to the court's ruling to exclude evidence with respect to the voluntariness of the defendant's *Miranda* waiver.

It is well established that "[a] defendant's fundamental right to present a defense, guaranteed by the due process clause of the fourteenth amendment to the United States constitution, includes the right to present evidence of the circumstances under which a custodial statement was made." *State* v. *Fernandez*, 27 Conn. App. 73, 78, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992); see also *Crane* v. *Kentucky*, 476 U.S. 683, 690–91, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). The reason for this rule is that certain of those circumstances, such as a police interrogator's use of coercive tactics to force or induce the defendant to make a statement or the defendant's special susceptibility to being influenced by such tactics to make a false statement, may reasonably be claimed to cast doubt on the reliability of the statement.

Our review of the record indicates that the court's ruling did not violate this rule, or thereby undermine the

defendant's constitutional right to present a complete defense. Rather, the ruling was limited to precluding evidence concerning the voluntariness of the defendant's *Miranda* waiver, *except* to the extent that such evidence was offered to test the reliability of the defendant's statements in light of the circumstances in which they were made. Indeed, the court *expressly permitted* defense counsel to thoroughly probe the circumstances surrounding the defendant's statements, which is exactly what the constitution requires. See *Crane* v. *Kentucky*, supra, 476 U.S. 689–90 (defendant must be afforded opportunity to challenge credibility of custodial statement). Accordingly, the defendant's constitutional claim is without merit.[8]

The defendant's parallel claim of evidentiary error must also fail. Defense counsel offered the excluded testimony to show that the defendant's statements were "not completely knowing and voluntarily given." He never claimed, however, that the purpose or effect of such testimony would be to show that the defendant's statements were unreliable in light of the circumstances in which they were made. A challenge to the voluntariness of a defendant's statements to the police may be based upon a claim that the procedures used to obtain them were of the sort that tends to undermine the statements' reliability. It may, by contrast, be based upon a claim that the defendant made the statements in question without knowing the full extent of his legal rights to remain silent and/or not to submit to custodial interrogation without the assistance of private or appointed counsel. Evidence supporting the former claim is, by its very nature, admissible in evidence to rebut admissions contained in the defendant's custodial statements, and thus to support his defense. Evidence supporting the latter claim, by contrast, although potentially supportive of a motion to suppress the defendant's statements based upon an alleged violation of the defendant's privilege against self-incrimination and/or his right to counsel, does not necessarily bear upon, or thus constitute admissible trial evidence with respect to, the reliability of the challenged statements. Here, then, where the only proffered purpose of the excluded testimony was to undermine the voluntariness of the defendant's waiver of his *Miranda* rights, without any accompanying indication that such testimony was offered to challenge the reliability of those statements, its exclusion by the trial court was not erroneous. Accordingly, in these circumstances, we conclude that the court did not abuse its discretion by excluding testimony concerning the voluntariness of the defendant's *Miranda* waiver.

### III

The defendant next claims that the court improperly excluded as irrelevant evidence that Cartier glasses were found at Dean's home. We disagree.

The following additional facts and procedural history are necessary to resolve this claim. Prior to the defendant's case-in-chief during trial, defense counsel announced his intention to call Hartford police Detective Brian Plourde. Plourde was involved in the execution of a search warrant at Dean's residence where the police discovered, inter alia, a safe containing four cell phones, a pair of Cartier glasses, and ammunition. The state objected to Plourde's testimony on the ground that it was irrelevant. Specifically, the state argued that the Cartier glasses never were linked to the victim—a fact previously conceded by defense counsel. Defense counsel argued, however, that the Cartier glasses were relevant because they were found in Dean's residence and "Cartier glasses were reported missing from [Dixon]. So circumstantially it ties . . . Dean to the incident as having taken those glasses from [Dixon]." When the court asked defense counsel why he did not ask Dixon's girlfriend to identify the Cartier glasses as Dixon's during cross-examination, defense counsel stated: "Honestly, it didn't occur to me at that point to go ahead and show her a picture of the glasses." The state subsequently stated that the police did not link the Cartier glasses to Dixon. The court sustained the state's objection in part, excluding evidence with respect to the Cartier glasses.[9]

The principles governing our review of evidentiary claims are set forth in part I of this opinion. We supplement, however, the specific legal principles that govern our analysis of this particular claim. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 674, 22 A.3d 611 (2011).

The defendant contends that the Cartier glasses are relevant because "glasses costing $3000 are not a common item, and evidence that Dean had them in his safe could be used to support an inference that it was Dean who robbed Dixon of the glasses." Our review of the

record indicates that the value of the Cartier glasses seized from Dean's residence never was established. Moreover, the seized Cartier glasses never were identified or connected as being the Cartier glasses owned and worn by Dixon. For all purposes, it appears that the defendant's sole foundation for admitting the seized Cartier glasses was that they were the same brand as the glasses worn by Dixon. "[T]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *Deegan* v. *Simmons*, 100 Conn. App. 524, 540, 918 A.2d 998, cert. denied, 282 Conn. 923, 925 A.2d 1103 (2007). Making every reasonable presumption in favor of the trial court's ruling, we cannot conclude that the court abused its discretion by excluding the seized Cartier glasses as evidence that it was Dean, not the defendant, who robbed Dixon of his Cartier glasses.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Dean also was arrested and sentenced to twenty-five years of imprisonment after negotiating a plea bargain with the state.

[2] The issue of Dean's unavailability was abandoned by the parties during oral argument before this court. Although the trial court did not expressly determine that Dean was unavailable, the parties stipulated "[t]hat if the court ordered [Dean] to testify, he would refuse . . . [and] if he refuses to testify before the court, which we agreed he would do, that would render him unavailable." The court later instructed the jury with respect to the parties' stipulation as follows: "[I]f . . . Dean was called as a witness by either the prosecutor or the defense, he would refuse to answer any questions."

[3] Prior to pleading guilty, Dean offered conflicting accounts of what occurred on March 9, 2009, to the police. On March 18, 2009, Dean denied any involvement in Dixon's murder. The next day, March 19, 2009, Dean then stated that the defendant was solely responsible for killing Dixon.

[4] The defendant contends that Dean's statement was against his penal interest because, if it were true, it follows that he was subject to criminal liability for making a false statement to police in March, 2009. See footnote 3 of this opinion. We disagree. Dean did not face criminal liability for having made a false statement to the police at the time he made the alleged statement to Martin. Both of Dean's statements to the police occurred in March, 2009. He made the alleged statement to Martin no earlier than May, 2010, more than one year after his statements to the police. Thus, the limitations period for prosecuting Dean for having made a false statement to the police had already expired. See General Statutes § 53a-157b (false statement is class A misdemeanor); General Statutes § 53a-36 (sentence of imprisonment for class A misdemeanor not to exceed one year); General Statutes § 54-193 (c) (where punishment of offense does not exceed one year, state cannot prosecute if more than one year has passed from date offense is committed).

[5] Because Dean's statement was not against his penal interest, it is not necessary to determine if it was "trustworthy" for purposes of § 8-6 (4) of the Connecticut Code of Evidence.

[6] In denying the defendant's motion to suppress, the court determined that the defendant's statements were not the fruit of "an illegal arrest or detention." The court further determined that "[t]he defendant was properly advised of his *Miranda* rights and he knowingly, voluntarily and intelligently waived those rights. The statements were not the product of coercion, deception, manipulation or overreaching by the officers."

[7] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[8] Although the court, in making its evidentiary ruling, expressly noted that it had already decided the issue of voluntariness in making its ruling on the defendant's motion to suppress statements, that ruling had no logical or legal bearing on the evidentiary question presented for its decision. Even

if part of the court's suppression ruling had rejected a claim that the police had subjected the defendant to the sort of coercive interrogation tactics that tend naturally to produce unreliable statements, the defendant retained the right to present evidence to the jury attacking the reliability of his statements on the basis of such coercive police tactics.

[9] The court, however, permitted the defendant to introduce the ammunition found in Dean's safe. On appeal, the defendant contends that the court erred by excluding testimony concerning the Cartier glasses and the four cell phones found in Dean's safe. The state, however, contends that the defendant's claim with respect to the four cell phones was not preserved for appellate review. We agree. During trial, defense counsel indicated to the court that the police recovered several items from Dean's safe, but stated that he only intended to introduce specific items: "[T]he specific items that I would seek to introduce would be limited to . . . [ammunition, two firearms and] a pair of Cartier glasses . . . ." The court then made its ruling based on defense counsel's limited offer of evidence, which did not include the four cell phones found in Dean's safe. The admissibility of the four cell phones, therefore, was never ruled upon by the court. "It is fundamental that claims of error must be distinctly raised and decided in the trial court . . . . [We] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *State* v. *Faison*, 112 Conn. App. 373, 379–80, 962 A.2d 860 (2009). We, therefore, decline to review the defendant's claim with respect to the admissibility of the four cell phones.

————————————————