******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT H.*
(AC 36742)
(AC 37544)

Lavine, Devlin and Sheldon, Js.

*Syllabus*

Convicted of two counts of the crime of risk of injury to a child arising out
of two separate acts of masturbation in the presence of the minor victim,
and judgment revoking his probation, the defendant appealed. The defen-
dant claimed that the evidence was insufficient to support his conviction
as to one of the counts of risk of injury because the only evidence of
the second incident was two statements that he made to the police,
which were admitted without objection at trial. The victim had testified
at trial concerning only one such incident. The defendant claimed that
the common-law corpus delicti rule, or corroboration rule, precluded
his confession from being used as the only evidence of the second
incident because there was no substantial independent evidence tending
to establish the trustworthiness of that confession. This court affirmed
the conviction. The defendant, on the granting of certification, appealed
to our Supreme Court, which reversed the judgment of this court and
remanded the case to this court with direction to consider fully the
merits of the defendant's corpus delicti claim in light of its decision in
*State* v. *Leniart* (333 Conn. 88). *Held* that the defendant could not prevail
on his corpus delicti claim that his confession constituted insufficient
evidence for the jury to conclude that he had masturbated in the presence
of the victim on more than one occasion, as there was substantial
evidence to corroborate the defendant's written statement, which was
against his penal interest, that he had masturbated at least twice in the
presence of the victim, including that the defendant voluntarily went to
the police and agreed in writing to a videotaped interview with officers
and to waive his constitutional rights when he gave a signed, written
statement to the police, the defendant's statement closely paralleled
the victim's testimony regarding the defendant's masturbation in her
bedroom, there were seven stains containing the defendant's DNA on
the bottom of the victim's bedspread and testimony was presented at
trial that semen is water soluble and the defendant tried to wipe the
semen with a wet cloth and the bedspread had been laundered two or
three weeks before the police seized it.

Argued February 20—officially released June 23, 2020

*Procedural History*

Substitute information, in the first case, charging the
defendant with three counts of the crime of risk of
injury to a child and two counts of the crime of sexual
assault in the first degree, and information, in the sec-
ond case, charging the defendant with violation of pro-
bation, brought to the Superior Court in the judicial
district of Hartford, where the first case was tried to
the jury before *Suarez, J.*; verdict of guilty of two counts
of risk of injury to a child; thereafter, the defendant
was presented to the court in the second case on a plea
of guilty; judgment of guilty in accordance with the
verdict and judgment revoking probation, from which
the defendant filed separate appeals to this court, *Lav-
ine* and *Sheldon, Js.*, with *Flynn, J.*, dissenting, which
affirmed the trial court's judgments, and the defendant,
on the granting of certification, appealed to our
Supreme Court, which reversed the judgment of this
court and remanded the case to this court for further

proceedings. *Affirmed.*

*Naomi T. Fetterman*, for the appellant (defendant).

*Bruce R. Lockwood*, supervisory assistant state's attorney, with whom, on the brief, were *Lisa Herskowitz*, former senior assistant state's attorney, *Gail P. Hardy*, state's attorney, and *John F. Fahey*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. This risk of injury case returns to this court on remand from our Supreme Court; see *State* v. *Robert H.*, 333 Conn. 172, 175, 214 A.3d 343 (2019) (*Robert II*); directing this court to consider fully the merits of the "corpus delicti claim" raised by the defendant, Robert H., in his direct appeal. See *State* v. *Robert H.*, 168 Conn. App. 419, 422–23, 146 A.3d 995 (2016) (*Robert I*), rev'd, 333 Conn. 172, 214 A.3d 343 (2019). Our Supreme Court further directed this court to review the defendant's corpus delicti claim pursuant to its decision in *State* v. *Leniart*, 333 Conn. 88, 97, 215 A.3d 1104 (2019). We have considered the defendant's corpus delicti claim as directed and conclude that the judgments of conviction should be affirmed.

The following procedural history provides the context for this opinion. In 2013, the defendant was charged in a long form information with two counts of sexual assault in the first degree and one count of risk of injury to, or impairing the morals of, a child for a sexual encounter that allegedly took place between the defendant and the minor victim in the kitchen of the victim's home (kitchen incident). *Robert I*, supra, 168 Conn. App. 422–23. He also was charged in counts four and five of the long form information with risk of injury to, or impairing the morals of, a child (risk of injury) in violation of General Statutes § 53-21 (a) (1).[1] Counts four and five alleged two instances in which the defendant masturbated in the presence of the victim.[2] The charges were tried to the jury, which found the defendant not guilty of the three charges related to the kitchen incident. The jury, however, found the defendant guilty of the two risk of injury charges in violation of § 53-21 (a) (1), arising from the defendant's having masturbated twice in the presence of the victim.[3] Id., 426. After the jury found the defendant guilty, he pleaded guilty to a charge of violation of probation that had been alleged in a separate file. The court sentenced the defendant on all three charges to a total effective sentence of twenty years of incarceration. Id., 421.

The defendant appealed to this court, claiming that there was insufficient evidence to support a guilty verdict on a second charge of risk of injury for masturbating in the presence of the victim. Id., 421. He argued that "the only evidence presented at trial to support the jury's finding that he had masturbated in [the victim's] presence on more than one occasion were two statements he made to [the] police, which were admitted into evidence against him without objection at trial. The defendant [continued] that such evidence was insufficient to support his conviction on a second charge of risk of injury because, under the corpus delicti rule, also referred to as the corroboration rule, there was not substantial independent evidence tending to establish the trustworthiness of his confession to a sec-

ond act of masturbation in the [victim's presence]." Id., 421–22. In response, the state argued that "the defendant's [corpus delicti] claim [was] unreviewable because the corroboration rule is a rule of evidence governing the admissibility of oral and written statements, and the defendant never challenged the admissibility of his statements [to the police] at trial." Id., 422.

In deciding whether to review the defendant's claim in *Robert I*, the majority stated that this court recently had held, "in *State* v. *Leniart*, 166 Conn. App. 142, 152–53, 140 A.3d 1026 (2016) [rev'd in part, 333 Conn. 88, 215 A.3d 1104 (2019)],[4] that the corroboration rule is solely a rule of admissibility [and] agree[d] with the state that the defendant [could not] raise his unpreserved [corpus delicti] claim as part of his claim of insufficient evidence." (Footnote added.) *Robert I*, supra, 168 Conn. App. 422. The majority, therefore, concluded that it was not necessary "to decide whether there was substantial independent evidence tending to establish the trustworthiness of the defendant's confession." Id. The majority considered the defendant's "unobjected-to statements in the light most favorable to the state in evaluating his . . . claim of evidentiary insufficiency." Id. The majority ultimately concluded that the "defendant's statements that he masturbated in the [victim's presence] 'at least twice' provided a sufficient evidentiary basis for the jury reasonably to conclude that he was guilty beyond a reasonable doubt of both counts of risk of injury of which he was convicted"; id.; and affirmed the defendant's conviction.[5] Id., 432.

Our Supreme Court granted the defendant's petition for certification to appeal limited to the question of whether "the Appellate Court properly conclude[d] that the corpus delicti rule is merely a rule of admissibility, in determining that there was sufficient evidence to sustain the defendant's second conviction of risk of injury to a child . . . ." *State* v. *Robert H.*, 323 Conn. 940, 151 A.3d 845 (2016). After the appeal was argued, our Supreme Court issued a per curiam decision, answering the question by stating that "our corpus delicti rule is a hybrid evidentiary-substantive rule that implicates a defendant's fundamental right not to be convicted in the absence of evidence sufficient to establish every essential element of the charged crime beyond a reasonable doubt, and, therefore, even unpreserved corpus delicti claims are reviewable on appeal. See *State* v. *Leniart*, supra, 333 Conn. 110." *Robert II*, supra, 333 Conn. 175. The Supreme Court, therefore, reversed this court's judgment in *Robert I* and "remand[ed] the case to [this] court for full consideration of the merits of the defendant's corpus delicti claim." Id.

On November 19, 2019, this court issued an order stating that the parties may file simultaneous supple-

mental briefs, addressing the impact of *State* v. *Leniart*, supra, 323 Conn. 88, on the defendant's appeal. In his supplemental brief, the defendant claims that "the evidence was insufficient to sustain a conviction on a second charge of risk of injury since, under the corpus delicti rule, there was not any evidence, much less substantial, independent evidence, tending to establish the trustworthiness of his confession to a second act of masturbation in the presence of [the victim]."

Before considering the evidence before the jury, we set forth the applicable principles of law. A criminal defendant has a constitutional right not to be convicted of a crime "except upon sufficient proof . . . to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." (Internal quotation marks omitted.) *State* v. *Adams*, 225 Conn. 270, 275 n.3, 623 A.2d 42 (1993). "In reviewing a sufficiency of the evidence claim, we apply a two part test. First we construe the evidence in the light most favorable to sustaining the verdict. Second we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [fact finder] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the [fact finder] if there is sufficient evidence to support the [fact finder's] verdict . . . . We ask . . . whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Watson*, 195 Conn. App. 441, 445, 225 A.3d 686, cert. denied, 335 Conn. 912,      A.3d      (2020).

"[W]e do not sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Miles*, 97 Conn. App. 236, 240, 903 A.2d 675 (2006).

We now turn to *State* v. *Leniart*, supra, 333 Conn. 88. The corpus delicti rule "generally prohibits a prosecutor from proving the [fact of a transgression] based solely on a defendant's extrajudicial statements." (Internal quotation marks omitted.) Id., 97. Our Supreme Court now has concluded that "the corpus delicti rule is a hybrid rule that not only governs the admissibility of confession evidence but also imposes a substantive requirement that a criminal defendant may not be convicted solely on the basis of a naked, uncorroborated confession." Id., 110. The rule "not only governs the admission of confession evidence but also sets the conditions for obtaining a conviction." Id., 101.

"[T]he general rule is that the corpus delicti cannot be established by the [extrajudicial] confession of the

defendant unsupported by corroborative evidence. . . . There are cases which hold in effect that it must be established by evidence independent of the defendant's confession and that without such proof evidence of the confession is inadmissible." (Internal quotation marks omitted.) Id., 111; see *State* v. *Doucette*, 147 Conn. 95, 98–100, 157 A.2d 487 (1959), overruled in part by *State* v. *Tillman*, 152 Conn. 15, 20, 202 A.2d 494 (1964); *State* v. *LaLouche*, 116 Conn. 691, 693, 166 A. 252 (1933), overruled in part by *State* v. *Tillman*, 152 Conn. 15, 20, 202 A.2d 494 (1964).

In keeping with the modern trend, our Supreme Court previously reduced the burden the corpus delicti rule imposes on the state in prosecuting crimes. See *State* v. *Leniart*, supra, 333 Conn. 112. In *State* v. *Tillman*, 152 Conn. 15, 20, 202 A.2d 494 (1964), the court "departed from the traditional rule that the state must establish, by independent evidence, both that an injury or loss occurred and that the loss was feloniously caused. . . . [T]he corpus delicti that must be established by independent evidence encompasses only the former element, namely, the specific kind of loss or injury embraced in the crime charged." (Footnotes omitted.) *State* v. *Leniart*, supra, 112. The court again, in *State* v. *Harris*, 215 Conn. 189, 193–94, 575 A.2d 223 (1990), modified the rule as it applies to "crimes, such as driving under the influence, that proscribe certain undesirable conduct but do not necessarily entail any particular injury or loss." *State* v. *Leniart*, supra, 113. "[F]or crimes of that sort, the state need not establish the corpus delicti of the crime through extrinsic evidence . . . [it] need only introduce substantial independent evidence [that] would tend to establish the trustworthiness of the [defendant's] statement." (Internal quotation marks omitted.) Id. In *State* v. *Hafford*, 252 Conn. 274, 317, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000), our Supreme Court "held that this trustworthiness rule set forth in *Harris*, also known as the corroboration rule, now applies to all types of crimes, not only those offenses that prohibit conduct and do not result in a specific loss or injury. In other words, post-*Hafford*, a confession is now sufficient to establish the corpus delicti of any crime, without independent extrinsic evidence that a crime was committed, as long as there is sufficient reason to conclude that the confession is reliable." (Internal quotation marks omitted.) *State* v. *Leniart*, supra, 113.

To determine whether there was substantial, independent evidence to corroborate the defendant's confession that he twice masturbated in the presence of the victim requires us to examine all of the evidence presented at trial.[6] At the time of the alleged sexual abuse, the victim was a ten or eleven year old, intermediate school student. She was thirteen years old when she testified at trial. She lived with her older brother

and her mother, who was romantically involved with the defendant, who spent time in the victim's home. The victim's bedroom was adjacent to her mother's bedroom and was connected to it by a doorway.

During her testimony, the victim was able to recall two specific incidents of a sexual nature that transpired between her and the defendant. During one incident, the victim was lying on her bed watching television when the defendant entered her bedroom, took out his penis, masturbated, and ejaculated onto her bed. After the defendant ejaculated, he wet a cloth and "tried to rub [the semen] off." The second incident took place after the first and occurred in the kitchen. During the kitchen incident, the victim, dressed in her pajamas, was bending over when the defendant approached her from behind and pulled down her pajama bottom. He placed his penis in her "butt" and penetrated her vaginally or anally. The victim did not tell her mother about the incidents that occurred between her and the defendant because she was scared. Although the victim testified that something unusual had occurred between her and the defendant on more than one occasion, at trial she could recall only the two events just described.

The kitchen incident took place approximately three weeks before the victim disclosed the defendant's abuse to a school friend, K, in March, 2011. K wrote a note about the victim's disclosure to one of their teachers, Gail Jordan, who reported the alleged abuse to a school counselor. The next day, the victim's counselor, Karen Goldman, spoke with the victim, who shared with her the defendant's sexual abuse. Because she is a mandated reporter,[7] Goldman reported the alleged abuse to the Department of Children and Families (department). On the day the department received the complaint, Nina Bentham, a department investigator, reported the complaint to Detective Beth Leger of the Bloomfield Police Department, with whom the department had a working relationship. That evening, Bentham and Leger together went to the victim's home, where the defendant was present. Leger spoke to the victim's mother privately and secured her permission to seize a fitted bedsheet and bedspread from the victim's bed.

Subsequently, the victim was examined at Connecticut Children's Medical Center on March 10, 2011. On March 14, 2011, the victim also was examined by Audrey Courtney, a pediatric nurse practitioner at the Children's Advocacy Center at St. Francis Hospital and Medical Center (children's center). Courtney made a written report of her examination, which was placed into evidence. Richard Cousins, an inspector in the state division of criminal justice, obtained a buccal swab from inside the victim's cheek for DNA testing. Erin Byrne, a forensic interviewer at the children's center, also authored a report that was put into evidence. Byrne's interview of the victim was videotaped and shown to

the jury.

Leger telephoned the defendant to arrange a meeting at the Bloomfield police station. At that meeting on April 7, 2011, the defendant signed a consent to search form giving the police permission to take a buccal swab from the inside of his cheek for DNA testing. Leger also asked the defendant to submit to another interview.

The bedclothes Leger collected from the victim's bed were transferred to the state forensic laboratory by Madison W. Bolden, Jr., a Bloomfield police officer. Jane Codraro, a forensic biologist at the state forensic laboratory, testified about her examination of the blue fitted bedsheet and the bedspread Leger removed from the victim's bed. Codraro found stains on both the sheet and bedspread. She used a screening test known as acid phosphatase to detect the presence of semen on both the sheet and bedspread. She found no evidence of semen on the bedsheet, but there were approximately seven stains containing semen in a one and one-half feet square area on the bedspread at the foot of the bed. Codraro was able to extract cellular material from one of the bedspread stains that indicated the presence of spermatozoa. Codraro sent the cellular material to the DNA section of the laboratory for further testing. The defendant's DNA was found in the cellular material. Codraro also testified that semen is water soluble and could be removed by washing.

On May 17, 2011, the defendant voluntarily went to the West Hartford police station where he was interviewed by Leger and Frank Fallon, then a sergeant in the West Hartford Police Department.[8] Fallon presented the defendant with a waiver of rights form that the defendant read and signed. Fallon and Leger spent approximately four hours interviewing the defendant in a room approximately eight feet by eight feet,[9] but they did not spend the entire time discussing the victim's allegations.[10] Both Fallon and Leger testified that a discussion of the victim's allegations did not begin until the defendant spoke the word "enticement." Leger testified that the defendant stated that he had been enticed by the victim when he was lying on her mother's bed from where he could see the victim lying on her bed masturbating. The defendant began masturbating and at some point ended up near the victim's bed masturbating until he ejaculated. He also stated that it was possible that the victim had touched his penis. The defendant steadfastly denied that he ever penetrated the victim. He, however, admitted that he masturbated twice near the victim's bed while she was in it. The defendant became emotional, stating that he knew what he had done was wrong, and that, as an adult, he knew that it should not have happened.

During the interview, Leger represented to the defendant that the police had certain evidence, namely the victim's underwear containing his semen, which actu-

ally they did not have. Leger explained that that interview technique is used by police officers to elicit a truthful response. The police may get a very clear objection to the evidence because the suspect knows that it does not exist, or the technique may help the suspect to be truthful.

At no time during the interview did the defendant invoke his right to remain silent, state that he wanted an attorney or otherwise invoke his constitutional rights. He appeared to Leger to be coherent, and not under the influence of alcohol, drugs, or medicines. At the conclusion of the interview, the defendant agreed to give Leger a written statement summarizing what he had stated during the interview. He dictated his statement to Leger, read it, swore to its truthfulness, and signed it. After he signed the statement, the defendant left the West Hartford police station. He was not under arrest.

The final forty or so minutes of the defendant's recorded interview was played for the jury. His written statement was read to the jury and placed into evidence. The defendant's confession, which is the basis of his corpus delicti claim, states as follows: "I . . . do hereby make the following statement of my own free will, without fear, threats or promises of any kind, and knowing that the same may be used in court against me, and that false statements are punishable by law.

"Either late January or February, 2011, I was visiting my girlfriend . . . at her apartment . . . . I was in [her] bedroom. [She] was in the living room and had smoked weed. I was lying in [her] bed and could see [the victim] in her bedroom, lying in her bed, with her hands inside her pants. She was masturbating. She knew that I could see her, but it was like she wanted me to see her.

"After watching her masturbate for about [fifteen] minutes, I went to [the victim's] room. I stood about two or three feet away from her bed, and with my clothes on, pulled my penis out and started to masturbate myself.

"She seemed like she was happy with me doing that. I ejaculated in her general direction, but not on top of her. I don't know if she came or not.

"This same thing happened *at least twice*, where I masturbated in front of her in her room, and it's probably how my semen got on her bed or clothes. I never penetrated her with my penis or anything else. I think she might have touched my penis on one of those times, right after I ejaculated, which might explain any of my semen in her pants.

"I've had a problem with resisting temptation like this for quite a while. I have been attending group therapy sessions, but don't think that program is working for me. I believe I need more help than that, because I don't

want to continue doing these things.

"I've read the above statement consisting of one page and it is true and correct. . . ." (Emphasis added.)

At the conclusion of evidence, the state argued to the jury that the sexual assaults alleged in counts one and two and risk of injury alleged in count three related to the kitchen incident. The risk of injury counts alleged in counts four and five were predicated on the two incidents during which the defendant masturbated in the victim's presence. *Robert I*, supra, 168 Conn. App. 426. The state specifically argued that the defendant had confessed to having masturbated in the victim's presence on two occasions. Id. In his closing argument, defense counsel argued that the victim's story changed each time she told it. Id.

On appeal, the defendant claims that there was no substantial independent evidence to establish the trustworthiness of his confession that he twice masturbated in the presence of the victim. Under the corroboration rule, the state need only "introduce substantial independent evidence [that] tend[s] to establish the trustworthiness of the [defendant's] statement[s]." (Internal quotation marks omitted.) *State* v. *Leniart*, supra, 333 Conn. 119. The substantial evidence standard is met if the record provides a "substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 315, 596 A.2d 426 (1991).

On the basis of our review of the record, we conclude that it contains substantial independent evidence to corroborate the trustworthiness of the defendant's confession. The defendant's sworn written statement that he masturbated "at least twice" in the presence of the victim is a statement against his penal interest, which has been recognized as indicative of trustworthiness by the United States Supreme Court. See *United States* v. *Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) (admission of crime, like admission against proprietary interests, carries indicia of credibility). Our appellate courts and code of evidence reflect this rule of trustworthiness.

In addressing the admissibility of a coconspirator's confession to his postconviction cellmate, this court has looked to § 8-6 of the Connecticut Code of Evidence, which concerns hearsay. See *State* v. *Collins*, 147 Conn. App. 584, 590, 82 A.3d 1208 (confession not against penal interest), cert. denied, 311 Conn. 929, 86 A.3d 1057 (2014). See Conn. Code Evid. § 8-6 (4) ("A trustworthy statement against penal interest that, at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In determining the

trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest.").

"The against [penal] interest exception is not limited to a defendant's direct confession of guilt. . . . It applies as well as to statements that tend to subject the speaker to criminal liability. . . . The rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant." (Citations omitted; internal quotation marks omitted.) *State* v. *Bryant*, 202 Conn. 676, 695, 523 A.2d 451 (1987).

In the present case, the evidence demonstrates that the defendant voluntarily went to the West Hartford Police Department, agreed in writing to a videotaped interview with two police officers, and again agreed in writing to waive his constitutional rights when he gave a signed, written statement to Leger, the detective investigating the report of the defendant's abuse. The defendant attested to the truthfulness of his statement that he masturbated at least twice in the victim's presence. His statement closely parallels the victim's testimony during which she described the defendant's masturbating in her bedroom. The victim's testimony lends credibility to the defendant's statement that he masturbated at least twice in her presence. Seven stains were found on the bedspread that covered the bottom portion of the bed. Laboratory analysis detected the presence of the defendant's DNA on the bedspread, confirming that the defendant had ejaculated on to the victim's bed. Codraro testified that semen is water soluble. The victim testified that the defendant tried to wipe the semen from her bedspread with a wet cloth and that the bedspread had been laundered two or three weeks before Leger seized it. This evidence strongly corroborates the defendant's statement that he had masturbated in the victim's presence at least twice.

For the foregoing reasons, we conclude that there was substantial evidence to corroborate the defendant's written statement that he had masturbated at least twice in the presence of the victim. The defendant's corpus delicti claim, therefore, fails.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of . . . a class C felony . . . ."

[2] Counts four and five of the long form information are identical and allege in relevant part: "The said Senior Assistant State's Attorney further accuses **Robert [H.]** of the crime of **INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF A CHILD**, in violation of . . . General Statutes § 53-21 (a) (1) and alleges that on unspecified dates between September, 2009 and March 5, 2011, at or near [the victim's address] . . . the defendant did an act likely to impair the health or morals of a child under the age of sixteen, identified as the person listed in State's Exhibit 1." (Emphasis in original.) Exhibit 1 states the name of the victim, her date of birth, and town of residence.

[3] The defendant moved for a judgment of acquittal at the close of the state's case-in-chief, at the close of evidence, and again at sentencing. The defendant argued that there was no evidence to support a finding that he masturbated in the victim's presence a second time, as the victim had testified to only one such incident. He further argued that the state, therefore, could not establish that she was harmed or affected by the alleged second incident if she was not aware of it. *Robert I*, supra, 168 Conn. App. 425. The state responded by arguing that risk of injury does not require that the child be aware of the defendant's acts, only that the defendant's conduct was of a nature that it was likely to impair the health or morals of a child. Id., 425–26. The court denied each of the defendant's motions for judgment of acquittal, stating that there was sufficient evidence by which the jury could find that the defendant had masturbated in the victim's presence on more than one occasion. Id., 426.

[4] Judge Flynn dissented in part in *State* v. *Leniart*, supra, 166 Conn. App. 228. He agreed "with the majority that there was sufficient independent evidence that the defendant intentionally caused the death of the victim, corroborating the extrajudicial confession of the defendant, and thus by sufficient evidence establishing the necessary elements of the crime of murder . . . . [He] dissented in part because [he] did not agree that the corpus delicti rule was merely evidentiary in that murder case." (Citation omitted.) *Robert I*, supra, 168 Conn. App. 433.

[5] Judge Flynn wrote a dissenting opinion in *Robert I* as he did in *Leniart*. See footnote 4 of this opinion. In *Robert I*, he opined that corpus delicti claims implicate a defendant's substantive due process rights and, therefore, are reviewable on appeal even if not preserved at trial, and that the evidence at trial was not sufficient to corroborate the reliability of the defendant's confession as to a second incident of sexual misconduct. See *Robert I*, supra, 168 Conn. App. 435–38.

[6] We undertake a more extensive review of the evidence than was done in *Robert I*.

[7] Teachers and school counselors, among others, are mandated reporters of suspected child abuse. See General Statutes § 17a-101 (b).

[8] Fallon testified that it is common practice for police departments in the Greater Hartford area to assist one another in investigations.

[9] The defendant's entire interview was video recorded.

[10] Fallon testified about the training police officers undergo to investigate and speak with suspects in crimes of sexual abuse of young children. The police seek to create a comfortable environment for an individual to speak about sensitive allegations.

---